IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ROLAND R. JAMERSON                                                    PLAINTIFF
ADC #510459

V.                        No: 4:20-CV-01092-JM-PSH

MELANIE FOSTER-JONES                                                  DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Roland Jamerson, an inmate confined at the North Central Unit of the Arkansas Division of Correction ("ADC"), filed this *pro se* 42 U.S.C. § 1983 suit alleging that he received inadequate medical care from Dr. Melanie Foster-Jones at the ADC's Wrightsville Unit in 2018. *Id.*

Before the Court is a motion for summary judgment, a brief in support, and a statement of facts filed by Dr. Foster-Jones (Doc. Nos. 13-15), claiming that Jamerson did not exhaust available administrative remedies with respect to his claims against her before he filed this lawsuit. In response, Jamerson filed a response, brief in support, and statement of disputed facts (Doc. Nos. 24-26), and Dr. Foster-Jones filed a reply (Doc. No. 30). For the reasons described herein, the undersigned recommends that Dr. Foster-Jones' motion for summary judgment be granted.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations

omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

Dr. Foster-Jones argues she is entitled to summary judgment because Jamerson failed to exhaust available administrative remedies as to his claims against her before he filed this lawsuit. In support of her motion, Dr. Foster-Jones submitted the following documents: the ADC's grievance policies (Doc. Nos. 14-1–14-3); Jamerson's relevant grievance records (Doc. No. 14-4); and a declaration by

Jacqueline M. Buterbaugh, the ADC's Medical Grievance Coordinator (Doc. No. 14-5).

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to the ADC's grievance policy (AD 14-16),[1] inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc.

---

[1] Administrative Directive 14-16 was in effect during the Spring of 2018 when Jamerson claims that Dr. Foster-Jones provided him with inadequate medical care. Doc. No. 14-1. Administrative Directive 19-20 became effective on August 1, 2019, and Administrative Directive 19-34 because effective on December 2, 2019. *See* Doc. Nos. 14-2 & 14-3.

No. 14-1 at 4. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form within 15 days after the occurrence of the incident. *Id.* at 5. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id*. at 4. The policy provides that only one grievance form

> can be submitted per grievance and only one problem/issue should be stated in the grievance, not multiple problems/issues. An inmate must use a separate form for each issue. Only one issue will be addressed. Additional problems/issues contained in the grievance will not be considered as exhausted.

*Id.* at 5. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*. at 5-6. A problem solver investigates the complaint and provides a written response at the bottom of the form. *Id*. If the inmate is not satisfied with the resolution, he may then complete Step Two of the grievance procedure and submit the form as a formal grievance. *Id.* at 8. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can appeal to the appropriate Chief Deputy/Deputy/Assistant Director. *Id.* at 10-11. Once that person responds, the grievance process is exhausted. *Id.* at 12. According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances. *Id.* at 13. The grievance policy specifically states that inmates must

exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 17.

### *Jamerson's Claims*

Jamerson alleges in his amended complaint that he began submitting sick calls in February 2018 requesting medical treatment for his eyes. Doc. No. 4 at 4. His symptoms continued until March 4, 2018, when he became dizzy, unable to stand, and unable to use his extremities. *Id.* He claims the right side of his face also became numb and was drooping. *Id.* Jamerson claims he suffered a stroke. Jamerson alleges that Dr. Foster-Jones treated him in the infirmary and told him he might have meningitis. *Id.* He claims that she kept him in the infirmary overnight, released him, and he passed out while returning to the infirmary. *Id.* Jamerson claims that Dr. Foster-Jones then sent him to the University of Arkansas for Medical Sciences (UAMS) but did not provide an accurate report of his symptoms and failed to mention he might have meningitis. *Id.* at 5. Jamerson claims he then suffered a second stroke in Dr. Foster-Jones' office and was taken to a medical clinic in Hot Springs. *Id.* Jamerson concludes:

> Dr. Melanie D. Foster-Jones' failure to provide and/or relay [an] accurate account of my signs and symptoms that I was and had been displaying to the Doctors at the UAMS Hospital caused a great delay of the proper treatment that could have prevented me from having those strokes and subjecting me to great health risk.

*Id.*

### *Jamerson's Grievances*

According to Buterbaugh's declaration, Jamerson submitted two medical grievances before September 11, 2020, the date he filed this lawsuit. Doc. No. 14-5. Those grievances are: WR-18-00137 and NC-20-00515. *Id.* Jamerson did not identify any other grievances that may exhaust his claims in his response to Dr. Foster-Jones' motion for summary judgment. Doc. No. 26 at 1. Each of the grievances submitted by Jamerson is described below.

<u>WR-18-00137</u>

Jamerson submitted this grievance on April 24, 2018. Doc. No. 14-4 at 3. He complained that Dr. Foster-Jones and others had provided inadequate medical care to him after he had two strokes. *Id.* He proceeded to Step Two on April 26, 2018, and received a response on May 25, 2018. *Id.* at 1. The response reviewed Dr. Jones-Foster's treatment of Jamerson and found the grievance without merit. *Id.* Jamerson did not appeal that response. Doc. No. 14-5; Doc. No. 26 at 1.

Jamerson argues that he did not appeal the response to this grievance because he needed assistance from other inmates to use the grievance procedure after his strokes in 2018. Doc. Nos. 24-26. The Supreme Court in *Booth v. Churner* held that "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought."

532 U.S. 731, 738–39 (2001). The Eighth Circuit has found administrative remedies to be unavailable where prison officials prevented inmates from utilizing the grievance procedures or where officials failed to comply with such procedures. *See Gibson v. Weber*, 431 F.3d 339 (8th Cir. 2005); *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001). The United States Supreme Court held that an administrative remedy is unavailable when "it operates as a simple dead end," or when it "might be so opaque that it becomes, practically speaking, incapable of use." *Ross v. Blake,* 136 S. Ct. 1850, 1859 (2016).

Jamerson provides no proof to support his allegation that he could not use the grievance procedure due to his health. There is no indication he requested help from the prison but was denied, or that he was prevented from getting help if he needed it. A plaintiff's unsupported statement is insufficient to defeat a properly supported motion for summary judgment. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (quoting *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 569 (2000) ("When the movant makes a prima facie showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.")).

Furthermore, in response to Jamerson's allegation, Dr. Foster-Jones provided copies of Jamerson's relevant medical records. Doc. No. 30-1. These show that Jamerson was treated for viral meningitis, but all neurological deficits had resolved

by May 3, 2018. *Id.* at 3-4. An outside neurologist noted on July 24, 2018, that Jamerson was "alert, awake, oriented, no focal deficits." *Id.* at 11. Jamerson received the Step Two response on May 25, 2018; he had five working days to appeal. There is no indication in his medical records that he would have been unable to complete an appeal. Accordingly, the Court finds that the ADC grievance procedure was available to Jamerson, and because he did not complete the grievance procedure with respect to grievance WR-18-00137 by filing an appeal, it does not serve to exhaust his claims.

NC-20-00515

Jamerson submitted this grievance on June 8, 2020, more than two years after Dr. Foster-Jones treated him for meningitis.[2] Doc. No. 14-4 at 7. He grieved several issues relating to his health, including his treatment by Dr. Foster-Jones for strokes and meningitis. *Id.* He also complained that Dr. Hall took away his prescription for eyeglasses which made his eyesight worsen. *Id.* He proceeded to Step Two on June 15, 2020, and received a response on July 9, 2020. *Id.* at 5. The response reviewed his prescriptions for eyeglasses in 2020, and concluded that the grievance was without merit and beyond "the 15 day limitations of occurrence." *Id.*

---

[2] Jamerson indicates that he could not file NC-20-00515 sooner because he did not have the assistance from other inmates that he needed to complete a grievance. He does not mention this in the grievance itself, and there is no proof in the record to corroborate his claims that he was unable to write a grievance in a timely manner. In fact, he initiated WR-18-00137 on April 24, 2018, after he allegedly had a stroke in March.

Jamerson appealed and continued to claim that Dr. Hall took away his prescription for eyeglasses. *Id.* He also stated, "[this] continues course of conduct by all named individuals and lack of care on a purposeful, knowingly or recklessly acts and omissions have caused me to have these medical problems." *Id.* The appeal response informed Jamerson that the grievance procedure allowed 15 days to grieve an incident and the individuals he named in this grievance had last treated him in 2019 before he was transferred to the North Central Unit in January of 2020. *Id.* at 4. The Deputy Director noted that Jamerson had not submitted a sick call request concerning his eyeglasses within the 15-day period before he filed this grievance. *Id.* The Deputy Director concluded that the grievance was therefore untimely and did not address the merits of Jamerson's complaints. *Id.*

Grievance NC-20-00515 does not exhaust Jamerson's claims for two reasons. First, it does not adequately describe his complaint about Dr. Foster-Jones' treatment in 2018. Jamerson named Dr. Foster-Jones and mentioned ongoing problems with his medical treatment for strokes, but the bulk of his complaint concerned his prescription for eyeglasses. The grievance procedure instructs inmates to grieve only one issue in each grievance. *See* Doc. No. 14-3 at (Administrative Directive 19-34 effective December 2, 2019). The response to this grievance addressed only Jamerson's complaint about his eyeglasses before concluding that the grievance was untimely in any case. *See* Doc. No. 14-4 at 4.

Second, the grievance was ultimately rejected as untimely. The appeal response specifically found that Jamerson had not been seen by any of the providers he named (including Dr. Foster-Jones) since 2019, and had not made any request concerning his health care or eyesight in the 15 days prior to filing this grievance. The Deputy Director did not address the merits of Jamerson's appeal; accordingly, NC-20-00515 does not serve to exhaust his claims against Dr. Foster-Jones.

## IV. Conclusion

Jamerson did not exhaust a grievance relating to the issues in his complaint. Accordingly, the undersigned recommends that Dr. Foster-Jones' motion for summary judgment (Doc. No. 13) be granted. Jamerson's claims against Dr. Foster-Jones should be dismissed without prejudice for failure to exhaust available administrative remedies.

DATED this 24th day of May, 2021.

_____
UNITED STATES MAGISTRATE JUDGE